Kevin Wayne **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–96–191–CR.

Court of Appeals of Texas,
Waco.

July 16, 1997.

Rehearing Overruled Aug. 13, 1997.

Stan Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

John W. Segrest, Criminal District Attorney, Susan Kelly, Asst. District Attorney, Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury convicted Kevin Wayne Williams of arson and assessed punishment at 60 years' confinement. By six points of error, Williams now appeals his conviction complaining the evidence is insufficient regarding how the fire started, the prosecution injected new facts in closing argument, and the trial court erroneously allowed proof of extraneous offenses into evidence. Because the evidence is sufficient, new facts were not injected in the prosecutor's closing argument and the trial court did not commit error requiring reversal, we affirm.

After leaving work around 11:00 P.M. on February 23, 1993, Stephen Zobal went to Fellowship Bible Church to watch a video he had missed from a previous Sunday School. When Zobal neared the church he noticed an unfamiliar car parked by the entrance. Concerned that someone might be stealing something from the church, Zobal waited in his car and observed a man drive off in the car. Zobal followed the car and obtained its license plate number. Thereafter, Zobal returned to the church to see if anything was missing. After satisfying himself that everything was all right at the church, Zobal began watching the video. A short time later, Zobal smelled smoke. Soon, he heard the

sounds of approaching sirens. Zobal then went outside and saw that the building across the alley from the church, which housed the Oriental Rug Co., was on fire. Despite the efforts of the firemen, the building was totally gutted.

The morning after the fire, the police stopped a car with the license plate and description that matched the one Zobal saw the previous night near the church. The car belonged to Williams, an ex-employee of Oriental Rug. Williams left Oriental Rug's employment on unfavorable terms because he did not receive a Christmas bonus as he had expected. Moreover, he had threatened to get even with his ex-employer. These facts led investigators to consider Williams as a prime suspect if the fire was ruled an arson.

When firefighters arrived on the scene, the building's doors and windows were locked. Because the locked entrances indicated that nobody had entered the building to start the fire, investigators initially thought the fire may have started accidently. After determining that the fire started in or near a cock loft (the space between the roof and the ceiling) adjacent to a skylight on the building's roof, the investigators concluded that the fire was intentionally set. A grand jury eventually indicted Williams for arson. The indictment alleged that Williams started "a fire in a manner and means unknown to the Grand Jury or by lighting gasoline on the premises."

 In his first point of error, Williams complains the State failed to prove that the manner and means were "unknown to the Grand Jury," which rendered the evidence legally insufficient. When an indictment alleges that the manner or means utilized to inflict damage is unknown and the evidence at trial does not show what mechanism was used, a prima facie showing exists that the mechanism was unknown to the grand jury. *Hicks v. State,* 860 S.W.2d 419, 424 (Tex. Crim.App.1993); *McFarland v. State,* 845 S.W.2d 824, 830 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 847 (Tex.Crim. App.1991). If, however, evidence at trial shows what mechanism was used to inflict the damage, an issue is raised with respect to whether the grand jury had information,

when it handed down the indictment, as to the mechanism used. *Id.* Only in such a case, must the State prove that the grand jury did not know the manner or means used to inflict the damage and that the grand jury used due diligence in its attempts to ascertain the manner or means. *McFarland,* 845 S.W.2d at 830; *Matson,* 819 S.W.2d at 847.

During the trial, no evidence demonstrated the mechanism that Williams used to ignite the fire. Some testimony was elicited about the possibility of using a cigarette butt to start the fire. However, no witness ever testified that a cigarette butt or any other mechanism definitely ignited the fire. Because the evidence is inconclusive as to the instrumentality that was responsible for the starting of this arson fire, the State need not prove that the grand jury used due diligence in attempting to ascertain the ignition source. *Hicks,* 860 S.W.2d at 425. Therefore, we overrule Williams' first point.

 Williams' fourth point contends that the "State injected new facts into closing argument concerning the failure of the grand jury to find the manner and means that the fire began." To constitute a proper jury argument, the argument must entail one or more of the following: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Cantu v. State,* 939 S.W.2d 627, 633 (Tex.Crim.App. 1997); *Bryant v. State,* 923 S.W.2d 199, 211 (Tex.App.—Waco 1996, pet. ref'd). Counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable and offered in good faith. *Cantu,* 939 S.W.2d at 633. Conversely, jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error. *Id.; Bryant,* 923 S.W.2d at 211. In deciding whether a jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if the State made a willful or calculated effort to deprive the defendant of a fair and impartial trial. *Cantu,* 939 S.W.2d at 633.

During closing argument, the prosecutor stated the grand jury could not determine the manner and means of the fire's ignition because the fire completely gutted the building. This statement merely summarized the evidence as the record is replete with statements that the building was totally destroyed by the fire. Also, pictures introduced into evidence demonstrate the extensive damage the fire caused. From these photographs and other evidence, it is fair to say that the prosecutor made a reasonable inference that the grand jury could not determine the manner and means of this fire's ignition because of its devastating effect. Furthermore, during defense counsel's closing argument, he claimed the State offered no evidence that the grand jury did not know the manner and means of the fire origination. Thus, the prosecutor's statement simply answered the argument espoused by opposing counsel. After reviewing the entire record of closing arguments, we cannot say that the prosecutor made this argument in an effort to deprive Williams of a fair and impartial trial. *Id.* We overrule the fourth point.

■ In his second and third points, Williams complains that the evidence is legally and factually insufficient to prove he used gasoline to start the fire. Williams draws a distinction between accelerating the fire with gasoline and igniting the fire with items such as matches, cigarette lighters, cigarette butts, blow torches, or flint rock. *Taylor v. State*, 735 S.W.2d 930, 943 (Tex.App.—Dallas 1987), *rev'd on other grounds*, No. 1184–87 (Tex.Crim.App.1988) (unpublished). We agree that gasoline may be used to accelerate a fire as opposed to igniting a fire. *Id.* at 945. However, the indictment in this case alleged in the alternative that Williams started a fire "by lighting gasoline on the premises." The indictment does not allege the mechanism with which Williams used to ignite the accelerant gasoline. Thus, we read the indictment to allege in the alternative that Williams used some unknown mechanism to ignite a fire that was accelerated by gasoline.

The State elicited the testimony of Terry Bronough, who testified that Williams told him that he "poured gasoline around the place" and lit it. Additionally, the firemen and expert witnesses indicated that they believed some type of accelerant was used in this fire. After reviewing the evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found beyond a reasonable doubt that Williams somehow lit gasoline to accelerate this fire. *Moore v. State*, 935 S.W.2d 124, 126 (Tex.Crim.App.1996); *Bryant*, 923 S.W.2d at 206. Furthermore, even without viewing the evidence in the light most favorable prism, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Williams' second and third points are overruled.

■ Williams complains in his fifth point that the trial court erred in allowing proof of extraneous offenses. Also, he alleges in his sixth point that the trial court erred in admitting the extraneous offenses because they were more prejudicial than probative. These extraneous offenses regarded several burglaries which occurred at the Oriental Rug Co. prior to this arson. In those burglaries, the thief gained entrance to the building through the skylight near where the fire started. Bronough's testimony linked Williams to these burglaries because Williams told Bronough that he entered the building to set the fire "through his usual criminal passage." Williams claims the admission of this evidence may have tempted the jury to find him guilty for acts (i.e., the prior burglaries) other than the arson.

■ A defendant may not be tried for a collateral crime or for being a criminal generally. *DeLeon v. State*, 937 S.W.2d 129, 134 (Tex.App.—Waco 1996, pet. ref'd). Thus, Rule 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant for the purpose of proving the character of the defendant in order to show that he acted in conformity with that character on the occasion in question. Tex. R. Crim. Evid. 404(b); *Santellan v. State*, 939 S.W.2d 155, 168 (Tex.Crim.App.1997). The rule also provides exceptions to this principle, when evidence is admitted to show proof of motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident. *Id.* When the State attempts to introduce evidence of other crimes, wrongs, or acts, the defendant must object in a timely fashion to preserve his complaint for appeal. *DeLeon,* 937 S.W.2d at 134. After objection, the State must satisfy the trial court that the other crime, wrong, or act has relevance apart from its tendency to prove the defendant's character to show that he acted in conformity therewith.[1] *Santellan,* 939 S.W.2d at 168; *DeLeon,* 937 S.W.2d at 134. If the court decides that the evidence has no relevance apart from character conformity, then it is inadmissible. *Id.*

■ Nevertheless, the State may persuade the court that the evidence has relevance apart from character conformity, i.e., that "other purposes" such as those declared in Rule 404(b) will be served by its admission. *Id.* The relevance may be that the evidence tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary facts, such as motive, knowledge, opportunity, or preparation, leading inferentially to an element fact; or that it rebuts a defensive theory. *Id.* As long as the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion and the court's ruling will be upheld. *Santellan,* 939 S.W.2d at 169.

Williams made a timely 404(b) objection to the introduction of the evidence linking him to the prior burglaries. Therefore, the burden then fell on the State to persuade the trial court that the evidence was admissible for an other purpose under Rule 404(b). We believe Bronough's testimony about Williams' prior covert entries into the Oriental Rug Co. building demonstrate that Williams possessed both the knowledge and the opportunity to set this fire. When the firemen arrived at this fire, all the doors and windows in the building were locked. Fire investigators consider locked entrances to be a factor favoring a determination that the fire started accidently. Thus, Bronough's testimony linking Williams with an ability to enter the Oriental Rug Co.'s building with all the entrances locked established a key evidentiary fact in this case. *Santellan,* 939 S.W.2d at 168; *DeLeon,* 937 S.W.2d at 134. We find no abuse of discretion in the court's ruling to admit this evidence. *Santellan,* 939 S.W.2d at 169.

■ Because Williams made a proper Rule 403 objection, the trial court was obligated to weigh the probative and prejudicial value of the evidence. *Id.* at 169. The court weighs the probative value of the evidence to see if it is *substantially* outweighed by its potential for *unfair* prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. Tex. R. Crim. Evid. 403; *Santellan,* 939 S.W.2d at 169. The court engages in this balancing process while keeping in mind the presumption that relevant evidence is more probative than prejudicial. *Santellan,* 939 S.W.2d at 169. Factors that may be used in this balancing process include: (1) the inherent probative value of the evidence; (2) the similarity of the conduct to the offense on trial; (3) the strength of the evidence of the extraneous conduct; (4) the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways; (5) the trial time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial; and (6) the State's "need" for the evidence including (a) the availability of other evidence which tends to accomplish the same other purpose, (b) the strength of the other evidence, and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute. *DeLeon,* 937 S.W.2d at 136.

Under the first factor, the extraneous offense evidence linking Williams to the prior burglaries is inherently probative because it provides proof that Williams had the knowledge and opportunity to gain access to that part of the building where the fire started. Second, the prior burglaries and the arson in this case are not similar. Third, the evidence is strong because a normal person would not indicate he had a "usual criminal passage"

---

1. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Crim. Evid. 401.

unless he does. Fourth, the nature of the prior burglaries is not so egregious that it would sway the average juror into acting in an irrational way. Fifth, very little time was needed for the State to elicit the evidence linking Williams to the prior burglaries. Sixth, the State had a very strong need for this evidence because it carried the heavy burden of proving that Williams set fire to a building which had all its doors and windows locked. Although the State mentioned several times that prior burglaries occurred by persons gaining access to the Oriental Rug Co. building through the skylight, Bronough's testimony was the only one linking Williams with those prior burglaries. Because all of the factors weigh towards admitting the evidence of Williams' connection to the prior burglaries, the trial court did not abuse its discretion in admitting this evidence. *Id.* Williams' fifth and sixth points are overruled.

We affirm the judgment.